**Thomas ZITO, et al., Plaintiff,**

v.

**LEASECOMM CORPORATION, Microfinancial Incorporated, Cardservice International, Inc., E–Commerce Exchange, Inc., On–Line Exchange, Richard Karn Wilson a/k/a Richard Karn, Patrick Rettew, Peter R. Von Bleyleben, Richard F. Latour, Carol Salvo, Paul Schneider, Metrak Corporation, Charles Burtzloff a/k/a Chuck Burtzloff, John Doe and Eddy Roe, the last two being fictitious names, the real names of said Defendants being presently unknown to Plaintiffs, said fictitious names being intended to designate persons who are acting in concert with the Defendants, Defendants.**

No. 02 Civ. 8074 GEL/JCF.

United States District Court,
S.D. New York.

Feb. 10, 2006.

*MEMORANDUM AND ORDER*

FRANCIS, United States Magistrate Judge.

This is a civil RICO action brought by more than 200 individual plaintiffs who allege that they suffered injury as the result of a fraudulent scheme involving the leasing of e-commerce services and products. In the broadest terms, the plaintiffs assert that defendant Leasecomm Corporation "formed an

enterprise with various dealers who used unscrupulous and deceptive marketing tactics to lure unsuspecting victims into signing contracts with Leasecomm. These contracts contained unconscionable terms that allowed members of the enterprise to 'reap unconscionable profits' through extreme collection tactics." *Zito v. Leasecomm Corp.*, No. 02 Civ. 8074, 2004 WL 2211650, at *1 (Sept. 30, 2004) (*"Leasecomm II"*).[1]

The plaintiffs have filed what they characterize as an "omnibus" motion for a protective order, seeking relief with respect to several aspects of discovery. First, they ask that certain of the plaintiffs be permitted to respond to written questions in lieu of appearing in person for deposition, or, in the alternative, that these plaintiffs be deposed by telephone or videoconference. Other plaintiffs seek to be relieved of the obligation of appearing in New York for deposition. Second, the plaintiffs request that they not be required to provide individualized responses to the defendants' interrogatories. And, finally, the plaintiffs propose that a bellwether structure be imposed on this litigation such that only certain representative cases proceed initially through discovery and trial.

I will address each application in turn.

*Depositions*

Throughout the discovery planning process, the parties have distinguished between plaintiffs who assert claims of intentional infliction of emotional distress (the "IIED plaintiffs") and those who do not (the "non-IIED plaintiffs"). For example, in a prior conference before the Honorable Gerald E. Lynch, U.S.D.J., counsel discussed the possibility of deposing the IIED plaintiffs in New York and the non-IIED plaintiffs in several locations throughout the country. The Court issued no ruling at that time with respect to the location or format of any deposition. However, in a case management plan dated January 13, 2005, Judge Lynch directed that IIED plaintiffs appear for depositions and independent medical examinations in New York; again, he withheld ruling with respect to non-IIED plaintiffs. (Civil Case Management Plan (the "CMP"), attached as Exh. C to Affidavit of María D. Meléndez dated Sept. 29, 2005 ("Meléndez Aff."), ¶ 6(c)(vi)).

The defendants then served notices of deposition for all plaintiffs, designating New York as the location for the IIED plaintiffs and one of seven different cities as the location for each non-IIED plaintiff.[2] (Meléndez Aff., Exh. I). The plaintiffs objected to the notices, and all discovery disputes were referred to me for resolution. In the meantime, the parties embarked on settlement negotiations, and discovery was held in abeyance. No agreement was reached, however, and the deposition issues are now ripe for determination.

■ The proposal that the non-IIED plaintiffs be subject to deposition upon written questions is without merit. Written questions are rarely an adequate substitute for oral depositions both because it is difficult to pose follow-up questions and because the involvement of counsel in the drafting process prevents the spontaneity of direct interrogation. Accordingly, depositions upon written questions are disfavored. *See Horvath v. Deutsche Lufthansa, AG*, No. 02 Civ. 3269, 2004 WL 241671, at *3–4 (S.D.N.Y. Feb. 9, 2004); *Sadowski v. Technical Career Institutes, Inc.*, No. 93 Civ. 455, 1994 WL 240546, at *1 (S.D.N.Y. May 27, 1994); *Mill–Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y.1989). Here, the plaintiffs have proffered no persuasive reason why the presumption in favor of oral depositions should be disregarded. Indeed, their complaint that it is unduly burdensome for them to provide individual answers to the defendants' interrogatories seems inconsistent with their purported preference for depositions upon written questions. Accordingly, all plaintiffs shall appear for oral deposition.

■ The argument that the non-IIED plaintiffs should be permitted to appear for

---

1. A full summary of the plaintiffs' factual allegations is found in *Leasecomm II* as well as in *Zito v. Leasecomm Corp.*, No. 02 Civ. 8074, 2003 WL 22251352 (Sept. 30, 2003) (*"Leasecomm I"*).

2. The cities designated for non-IIED plaintiffs were San Francisco, Denver, Chicago, Dallas, Orlando, Atlanta, and New York.

deposition by telephone or videoconference is more persuasive. Telephone depositions are a "presumptively valid means of discovery." *Normande v. Grippo*, No. 01 Civ. 7441, 2002 WL 59427, at *2 (S.D.N.Y. Jan. 16, 2002). Moreover, "[a]uthorization to take telephonic depositions does not depend upon a showing of hardship by the applicant." *Advani Enterprises, Inc. v. Underwriters at Lloyds*, No. 95 Civ. 4864, 2000 WL 1568255, at *2 (S.D.N.Y. Oct. 19, 2000). Indeed, in this case, it would be a hardship for many of the non-IIED plaintiffs to travel to distant cities to be deposed on claims that in some instances have very modest monetary value. By contrast, there is little prejudice to the defendants, who would also save expenses by taking these depositions telephonically. The depositions of the non-IIED plaintiffs shall therefore be conducted by telephone. However, to the extent that the defendants consider it important to view the demeanor of such a plaintiff during a deposition, the defendants may conduct the examination by videoconference provided that they bear the expense and make arrangements for the plaintiff to appear within 50 miles of the plaintiff's residence. I reserve the right to order a follow-up in-person deposition in any instance where the defendants can demonstrate that they were unable to conduct a meaningful deposition by telephone or videoconference. *See Normande*, 2002 WL 59427, at *2.

█ Eight IIED plaintiffs have applied to be relieved of the obligation of appearing in New York for their depositions.[3] (Declaration of John C. Klotz dated Aug. 30, 2005 ("Klotz Decl."), Exhs. E, F, G, H, I, J, K, L). Their requests are based primarily on issues of health and lack of financial resources. However, they have offered no persuasive reason for me to reconsider Judge Lynch's prior order directing that all IIED plaintiffs be deposed in New York. These plaintiffs have claims that could potentially dwarf the claims of the non-IIED plaintiffs, and they would be required to appear in New York for

medical examinations in any event. And, while the costs of travel may not be insignificant, plaintiffs' counsel are permitted to advance the expenses of litigation to their clients, provided the plaintiffs remain ultimately liable for such costs. New York Code of Professional Responsibility DR 5–103. The application of the IIED plaintiffs is therefore denied. The defendants shall, however, coordinate the depositions of these plaintiffs with the independent medical examinations so that the plaintiffs need travel to New York only once prior to trial.

*Interrogatories*

█ The defendants served a single set of interrogatories consisting of 169 separate questions. (Defendants' (Other Than Richard Karn Wilson a/k/a Richard Karn and Patrick Rettew) First "Master" Set of Interrogatories to Plaintiff Thomas Zito and Each of the Plaintiffs Whose Name and Address Appear on Schedule One to the Second Amended Complaint, attached as Exh. L to Meléndez Aff.). The plaintiffs responded with a single set of answers, objecting to certain interrogatories, providing some answers, and directing the defendants to information provided in the plaintiffs' initial disclosure pursuant to Rule 26(a)(1). (Plaintiffs' Response to Defendants' First Set of Interrogatories, attached as Exh. M to Meléndez Aff.). The defendants then complained that the responses were inadequate because, among other things, they failed to provide the requested information with respect to each individual plaintiff. The defendants later expressed a willingness to accept general answers to certain interrogatories so long as the answers were submitted—and verified or sworn to—by every plaintiff, and so long as each plaintiff provided specific answers to interrogatories having to do with individualized issues.[4] (Meléndez Aff., Exh. N). The plaintiffs would not agree, and they note that if each individual plaintiff's response were equal in length to the collective response already submitted, a total of more than 13,-

---

3. These plaintiffs are Kevin Pirnie, Eugene Sokol, Tammy Sokol, Mary Scott, David Scott, Patrick Curran, Cynthia Haase (a/k/a Cynthia Gunderson), and Christopher Nguti Ndakwe.

4. The defendants identified Interrogatories Nos. 1, 3–13, 23–47, 49–51, 53–65, 67–69, 71–95, 106–113, and 118–120 as requiring individualized specific responses.

000 pages would be generated. (Klotz Decl., ¶ 41).

At the outset, I am doubtful that the defendants' discovery demand complies with the limitation on the number of interrogatories imposed by the Federal Rules. Pursuant to Rule 33(a), absent stipulation or permission of the court, "any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts[.]" One court has read the term "parties" literally, finding that three defendants were each entitled to serve 25 interrogatories on the plaintiff, for a total of 75 questions. *See St. Paul Fire and Marine Insurance Co. v. Birch, Stewart, Kolasch & Birch, LLP,* 217 F.R.D. 288, 289 (D.Mass. 2003). On this reading of the rule, the defendants' interrogatories were proper, since eleven defendants joined in their submission. By the same reasoning, the plaintiffs would be entitled to propound more than 5,000 interrogatories.

A more sensible approach is advocated in one of the leading civil procedure treatises:

> The limitation on number of depositions ... speaks in terms of "sides" rather than parties. Because it frequently happens that a number of parties on the same side are represented by a single attorney and in that sense act in unison, this concept might be attractive in the interrogatory setting as well. In instances of legally related parties such as a parent corporation and its subsidiary, this could be particularly attractive. But the basic problem is more widespread. Consider, for example, a situation in which ten people injured in a bus crash sue the bus company in a single suit represented by the same lawyer. Should they be considered one party or ten for purposes of the interrogatory limitation? The best result would seem to be to recognize that in some instances nominally separate parties should be considered one party for purposes of the 25–interrogatory limitation.

Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1 at 261 (2d ed.1994).

I need not decide, however, whether the plain language of Rule 33(a) must be strictly applied in all circumstances. In this case, even if the interrogatories do not exceed the number permitted by rule, they are abusive. The defendants have, in essence, divided the issues in this case into numerous subparts and then demanded that each plaintiff identify witnesses and documents relevant to each separate subpart. Under Rule 26(b)(2), "[t]he frequency or extent of use of the discovery methods otherwise permitted ... shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative ... or (iii) the burden or expense of the proposed discovery outweighs its likely benefit[.]" Here the plaintiffs have disclosed the names of potential witnesses and are in the process of producing relevant documents. Requiring them to respond individually to the highly detailed interrogatories would provide little additional benefit but would be extremely expensive and time-consuming.

The defendants are, however, entitled to know when the plaintiffs have produced all documents responsive to their requests, and I will establish a date for the plaintiffs to represent that their production is complete. Further, to the extent that the defendants become aware during deposition that any plaintiff possesses relevant documents that were not previously disclosed, that plaintiff will appear for continued deposition after the additional documents are produced.

*Case Management*

██ Finally, the plaintiffs propose proceeding first with some twenty bellwether cases and then continuing, one after another, with the following categories of plaintiffs: those who seek only to have their credit rating cleared, those who seek monetary damages in the nature of restitution, those who seek compensatory damages, and those who assert IIED claims. (Klotz Decl., ¶¶ 78, 95–102). This proposal is largely incoherent. The plaintiffs have advanced no basis for the selection of the specific bellwether cases; they have not articulated what issues might be decided preclusively on the basis of the bellwether cases; and they have not explained how proceeding in stages will produce efficiencies rather than delay. I will not, therefore, structure discovery along the

lines suggested by the plaintiffs. Whether there is some rational basis for deciding how to group the cases for trial is a matter best deferred until the close of discovery.

In light of the rulings here and the delay occasioned by the unsuccessful settlement negotiations, the case management plan is modified as follows:

1. By February 28, 2006, the plaintiffs shall produce all documents required to be disclosed pursuant to Rule 26(a)(1) or responsive to any outstanding discovery requests and shall certify the completeness of the production.

2. By March 3, 2006, counsel shall agree on a schedule for depositions of all parties, failing which they shall present any disputes to the Court for resolution.

3. All fact discovery shall be completed by June 30, 2006.

4. The plaintiffs shall submit any expert reports and related expert disclosure by July 31, 2006, and the depositions of the plaintiffs' experts shall be completed by August 31, 2006.

5. The defendants shall submit any expert reports and related expert disclosure by September 29, 2006, and the depositions of the defendants' experts shall be completed by October 31, 2006.

6. The pretrial order shall be submitted by November 30, 2006, unless any dispositive motion is filed by that date. If such a motion is filed, the pretrial order shall be due thirty days after the motion is decided.

*Conclusion*

For the reasons discussed, the plaintiffs' motion for a protective order is granted to the extent that depositions of the non-IIED plaintiffs shall be conducted telephonically or by videoconference, and the plaintiffs need not respond further to the defendants' interrogatories. However, all IIED plaintiffs shall appear for deposition in New York, and the Court will not designate bellwether cases or structure discovery in stages. The case management order is amended as set forth above.

SO ORDERED.