463 F.Supp.2d 478 (2006)
In re Deposition Subpoenas of David GARLOCK, Richard Shapiro and Martin Nissenbaum.
Thomas Fallon, et al., Plaintiffs,
v.
Locke, Liddell & Sapp, LLP, Defendant.
No. M8-85 (LAK). No. 04-3210 RMW ARB.
United States District Court, S.D. New York.
December 5, 2006.
*479 Anthony B. Gordon, Law Offices of Anthony B. Gordon, Woodland Hills, CA, for Plaintiffs.
Emmett T. Flood, Williams & Connoly LLP, for Movants Ernst & Young LLP and David Garlock.
Brian D. Linder, Clayman & Rosenberg, for Movant Martin Nissenbaum.
John J. Tigue, Jr., Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., for Movant Richard Shapiro.
No. M8-85 (LAK). N.D. Calif. No. 04-3210 RMW ARB.

MEMORANDUM OPINION
KAPLAN, District Judge.
This matter, just as the prominent criminal prosecutions of KPMG LLP and many of its personnel, arises out of efforts by major accounting firms starting in the 1990s to develop generic tax shelter products for sale to multiple clients. Ernst & Young LLP ("E & Y") and three of its partners here seek to quash deposition subpoenas served on the partners in an action against a law firm that gave the plaintiffs tax opinions on tax shelter deals promoted by E & Y.

Facts
Thomas Fallon, Robert Puette, Carl Redfield and Rick Timmins purchased tax shelters promoted by E & Y that were called contingent deferred swaps ("CDS"). They claim that they did so in reliance upon, among other things, a tax opinion of the law firm, Locke, Liddell & Sapp, LLP ("Locke Liddell").
CDS and E & Y's role in it were subjects of hearings in 2003 by the Senate Permanent Subcommittee on Investigations. The Committee's report found that CDS was developed by a promoter who approached E & Y. E & Y then enlisted a number of firms, including the defendant law firm in this case, to help carry out CDS transactions. Specifically, E & Y arranged for Locke Liddell to provide clients, presumably including the plaintiffs, with an opinion letter to the effect that the transactions were more likely than not to survive IRS scrutiny.[1] This was a key element in marketing the product, as taxpayer reliance upon such an opinion letter would provide protection against fraud penalties in the event the IRS ultimately rejected the proposed tax treatment.
According to the Senate committee report, E & Y claimed that it never itself issued such a tax opinion because it was a promoter of the CDS transactions. In fact, however, there was strenuous disagreement within E & Y as to the likelihood that the transactions would pass IRS muster. There appears to be some evidence, at least, that E & Y as a firm did not believe that the transaction was more likely than not to withstand audit.
It appears that the IRS ultimately disallowed the deductions claimed or other tax treatment adopted by Fallon, Puette, Redfield *480 and Timmins for the CDS transactions in which they engaged. They then commenced an action in the Northern District of California entitled Fallon v. Locke, Liddell & Sapp, LLP, No. 04-3210 RMW ARB, in which they seek damages for alleged malpractice, misrepresentation, and breach of fiduciary duty and on other theories.
Plaintiffs served a subpoena on E & Yin the California action, seeking production of documents and a deposition of the firm. E & Y moved for a protective order. A principal basis of the motion was a claim that it has arbitration agreements with the plaintiffs that allow discovery only with leave of the arbitrator on a showing of need and that the plaintiffs should not be permitted to circumvent that restriction by serving a subpoena in the action against Locke Liddell. But both the magistrate judge and District Judge Whyte rejected the argument, essentially on the ground that plaintiffs were entitled to discovery against E & Y, as a non-party witness, in their action against Locke Liddell notwithstanding that they might be limited in their ability to obtain discovery against E & Y in any arbitration they might institute against it.
In due course, plaintiffs served deposition subpoenas on movants David Garlock, Richard Shapiro and Martin Nissenbaum, all E & Y partners. E & Y and the individuals all move to quash. They attempt to reargue the point that they litigated and lost in California, viz. that E & Y's arbitration clause forecloses plaintiffs from obtaining discovery from E & Y and its partners as non-party witnesses in an action against Locke Liddell. They argue also that there is no reason to believe that the individuals have information relating to the plaintiffs' claims against Locke Liddell.

Discussion
The Effect of the Arbitration Agreement
Movants' contention that the arbitration agreement forecloses discovery against them as non-party witnesses in an action against Locke Liddell is entirely baseless for two reasons.
First, E & Y already has litigated and lost this issue in California. Its partners obviously are in privity with it. The law of the case doctrine precludes reconsideration of the question here absent "cogent or compelling reasons."[2] No such reasons have been advanced.
Second, even if the Court were disposed to reexamine the question, it would reach the same result as Judge Whyte. The arbitration clause upon which E & Y relies places the availability and scope of discovery in the hands of the arbitrator. It thus presupposes the existence of an arbitrator  a condition that would occur if and only if an arbitration existed in which the plaintiffs and E & Y were parties. In consequence, the arbitration clause plainly has no bearing upon the availability of discovery against E & Y as a non-party witness in an action against another entity. Moreover, it would have been a very simple matter for E & Y to have sought an agreement in which the plaintiffs would have waived any right to obtain discovery against E & Y in any action or proceeding of any kind except in an arbitration against E & Y and even there only as the arbitrator might allow. Evidently it sought no such agreement  in any case, it did not obtain one  and there is no reason for the *481 Court to rewrite the bargain that it did make.
The Protestations of Ignorance
Movants seek to create the impression that the proposed deponents know nothing of relevance and that the deposition subpoenas are pure harassment. They attempt to do so, however, by artful drafting. They never actually say that the deponents know nothing relevant to the pending action. Rather, they say that the deponents do not recall "ever having communicated with the Plaintiffs or having performed any work for them,"[3] and that they have similar lack of recollection of communications with Locke Liddell "relating to Plaintiffs."[4] This is too cute for words, and that is putting the matter kindly.
We begin with the proposition that plaintiffs have no burden to show that the deponents have any relevant knowledge. "An order barring a litigant from taking a deposition is most extraordinary relief. It is the party seeking such an order that bears the burden of proving that the proposed deponent has nothing to contribute."[5]
Here, movants' carefully crafted declarations do not remotely approach a demonstration that they have "nothing to contribute." CDS was a generic tax shelter product designed for sale to multiple clients of E & Y. It would not be at all surprising for E & Y personnel  including the movants  to have been deeply involved in designing and reviewing the products, considering the sustainability of a "more likely than not opinion," concluding that finding outside law firms to render such opinions would be desirable, reviewing the form of proposed opinions, and a host of other manifestly pertinent matters without ever communicating with these plaintiffs, doing any work specifically for them, or communicating with Locke Liddell "relating to Plaintiffs."
Nor is this idle speculation. The Senate report makes clear that David Garlock, one of the movants, was involved in CDS.[6] E-mails already in plaintiffs' hands demonstrate the involvement of all three movants.

Conclusion
The motions to quash the subpoenas [docket items 570-573] are denied in all respects. Messrs. Garlock, Shapiro and Nissenbaum shall comply with the subpoenas on a date or dates prior to the end of January 2007 to be agreed upon by the parties or, in default of agreement, to be fixed by this Court. As there appears to have been no substantial basis for the motion, the undersigned will retain jurisdiction for the purpose of considering any motion for sanctions against E & Y and its counsel that plaintiffs may file, which motion shall be filed, if at all, on or before December 19, 2006, and for the purpose of resolving any other disputes with respect to these depositions.
SO ORDERED.
NOTES
[1] STAFF OF THE PERMANENT SUBCOMM ON INVESTIGATIONS OF THE S. COMM. ON HOMELAND SEC. AND GOVERNMENTAL AFFAIRS, THE ROLE OF PROF'L FIRMS IN THE U.S. TAX SHELTER INDUS. 82-85 (Comm. Print 2005) ("SENATE REPORT").
[2] Tri-Star Pictures, Inc. v. Leisure Time Prod., B.V., 88 Civ. 9127(DNE), 1992 WL 296314, at *3 (S.D.N.Y. Oct. 6, 1992) (citing Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir.1983)).
[3] E.g., Nissenbaum Decl. ¶ 3.
[4] Id. ¶ 4.
[5] Speadmark v. Federated Dep't. Stores, Inc., 176 F.R.D. 116, 118 (S.D.N.Y.1997) (citing Inv. Props. Int'l, Ltd. v. IOS, Ltd., 459 F.2d 705, 708 (2d Cir.1972); Naftchi v. New York Univ. Med. Ctr., 172 F.R.D. 130, 132 (S.D.N.Y. 1997)).
[6] SENATE REPORT at 85-86.