**Maximo SCOTT and Jay Ensor, et al., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**CHIPOTLE MEXICAN GRILL, INC., Defendant.**

No. 12–CV–08333 (ALC)(SN).

United States District Court, S.D. New York.

Signed Feb. 27, 2015.

Order Denying Reconsideration March 20, 2015.

Arsenio David Rodriguez, Brian Scott Schaffer, Frank Joseph Mazzaferro, Joseph A. Fitapelli, Fitapelli & Schaffer LLP, Justin Mitchell Swartz, Melissa Lardo Stewart, Naomi Briana Sunshine, Ossai Miazad, Outten & Golden, LLP, New York, NY, Gregg I. Shavitz, Keith M. Stern, Shavitz Law Group, P.A, Boca Raton, FL, for Plaintiffs.

## *ORDER*

SARAH NETBURN, United States Magistrate Judge:

On February 13, 2015, the plaintiffs wrote to renew their application to compel the defendant Chipotle Mexican Grill, Inc. ("Chipotle") to produce Chipotle's co-CEO Montgomery F. Moran for a deposition, and attached six sealed exhibits in support thereof. The plaintiffs seek to depose Moran because they assert that he has non-cumulative knowledge about the day-to-day operations of Chipotle, including the duties

and responsibilities of the Apprentices and the overtime classification decisions for Apprentices. In its February 20, 2015 response, Chipotle urges the Court to deny the request because Moran has no non-cumulative, important information and the information can be sought from other, lower-level Chipotle executives. Chipotle attached to its letter a declaration from Mr. Moran ("Moran Decl."), in which he asserts that he has no "unique personal knowledge concerning any of the issues related to this case." Moran Decl., ¶ 2.

Because Chipotle has been unable to produce documents responsive to many of the plaintiff's discovery requests with regards to the classification of Apprentices, the Court directs Chipotle to produce Moran for a four-hour deposition. Although his knowledge may not be unique, it is relevant and non-cumulative because of Chipotle's own unwillingness or inability to be forthcoming with discovery on this matter.

## I. Statement of Law

■ "Highly-placed executives are not immune from discovery." *Consolidated Rail Corp. v. Primary Indus. Corp.*, 92 Civ. 4927(PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993); *General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y.2002) (citing *Kuwait Airways Corp. v. American Sec. Bank, N.A.*, 86 Civ. 2542, 1987 WL 11994, at *4 (D.D.C. May 26, 1987) ("[H]igh ranking corporate executives are not automatically given special treatment which excuses them from being deposed.")). Holding otherwise would contravene the principle of broadly available discovery. *See Chevron Corp. v. Donziger*, 11 Civ. 691(LAK), 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) ("[S]enior executive are not exempt from deposition, and because principles relating to apex witnesses are in tension with the broad availability of discovery, it is important to excuse a witness from giving testimony only in compelling circumstances." (citations omitted)); Fed.R.Civ.P. 26(b)(1).

■ When considering whether to allow the deposition of a corporate executive, the Court must "begin with the proposition that plaintiffs have no burden to show that the deponents have any relevant knowledge." *In re Garlock*, 463 F.Supp.2d 478, 481 (S.D.N.Y. 2006). The Court considers the likelihood that the individual possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of business. See *Treppel v. Biovail Corp.*, 03 Civ. 3002(PKL)(JCF), 2006 WL 468314, at *1–2 (S.D.N.Y. Feb. 28, 2006); *General Star Indem.*, 210 F.R.D. at 83. *See, e.g., Chevron Corp.*, 2013 WL 1896932, at *1 (allowing the defendant's deposition of the plaintiff's CEO despite harassment concerns because there was "little doubt that [the CEO] has relevant knowledge," even if his knowledge was not necessarily unique).

■ In light of these considerations, "[c]ourts have recognized an additional layer of protection for senior corporate executives subject to depositions." *Alex & Ani, Inc. v. MOA Intern. Corp.*, 10 Civ. 4590(KMW), 2011 WL 6413612, at *3 (S.D.N.Y. Dec. 21, 2011). The principle behind this protective measure is Rule 26(b)(2), which limits discovery that is unreasonably cumulative or is obtainable from a "more convenient, less burdensome, or less expensive" source. Fed. R.Civ.P. 26(b)(2). *See, e.g., General Star Indem. Co.*, 210 F.R.D. at 82–83 (noting that courts have granted protective orders for executives where the party seeking the deposition has "not yet attempted to obtain information from lower level executives," where "high-level executives plainly had no knowledge of the facts," and "where the deposition was solely sought to harass the executive" (citations omitted)); *Consolidated Rail Corp.*, 1993 WL 364471, at *1 (noting that unless the "highly-placed executive" has some unique knowledge, "it may be appropriate to preclude a redundant deposition" of that official; the mere "fact that the [executive] has a busy schedule" or claims no unique knowledge of relevant facts, however, "is simply not a basis for foreclosing otherwise proper discovery." *Id.* (quoting *CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y.1984)). Where an executive makes such claims, the claim "is subject to testing by the examining party." *Consolidated Rail Corp.*, 1993 WL 364471 at *1; *Chevron Corp.*, 2013 WL 1896932 at *1.

See also Less v. Taber Instrument Corp., 53 F.R.D. 645, 647 (W.D.N.Y.1971) ("A claim that [the executive] has no knowledge of any relevant facts should not be allowed to prevent his examination, since plaintiff is entitled to test his lack of knowledge. Likewise, the fact that [he] is a very busy executive should not bar his examination." (citations omitted)).

## II. Discussion

■ On October 29, 2014, the plaintiffs wrote to the Court requesting a conference to address plaintiff's anticipated motion to compel Chipotle to produce five of its most senior executives, including Mr. Moran. On November 18, 2014, Chipotle responded, consenting to certain executive depositions, but objecting to the depositions of two senior executives, Mr. Moran and Restaurant Support Officer Michael Duffy.

The Court held a pre-motion conference on November 20, at which counsel for the plaintiffs suggested that it had evidence that Mr. Moran was involved in the development of the Apprentice position and staffing models, among other things, and offered to submit such documents in camera. Chipotle, on the other hand, argued that Mr. Moran was not involved in the day-to-day operations and did not possess non-cumulative information about the duties and responsibilities of the Apprentices. The Court directed Chipotle to produce Mr. Duffy but denied without prejudice the plaintiffs' request to depose Mr. Moran. The Court indicated that after additional discovery had been conducted, the plaintiffs could renew their application to depose Mr. Moran, if they concluded that it was necessary. Discovery concludes on March 31, 2015.

On February 13, 2014, the plaintiffs' renewed their request to depose Mr. Moran and filed documents for in camera review, and on February 20, 2015, Chipotle opposed the request and filed Mr. Moran's declaration. In his declaration, Mr. Moran states that he has six direct reports, including two Restaurant Support Officers whom he

"works closely with [ ] on all policy and operational issues affecting Chipotle restaurants." Moran Decl. at. ¶ 4. He confirmed that he has "participated in some decisions concerning restaurant-level staffing models" but states that other restaurant operations executives have as much knowledge on the subject as he does. Id. at ¶¶ 5–6. He also states that he was not involved in the decision to reclassify California Apprentices, and is "unaware of who participated in the decision, why the decision was made, what prompted the decision, or what, if any, documents exist concerning the decision." Id. at ¶ 8.

In addition, and relevant to the Court's ruling on this dispute, at a court conference on February 9, 2015, counsel for Chipotle stated that no documents have been retrieved that address the original decision—made some 15 years ago—to classify Apprentices as exempt employees. (Feb. 9, 2015 Hearing; Tr. 37–40; "nothing has turned up in those searches"; "no files have been found"; "So, from a paper standpoint, we're coming up empty."). Chipotle's counsel also stated, in discussing the re-classification decision in California that occurred in 2002 that "[t]here's not a single human resources employee that is still a legacy employee that has existed from 2002 to the present." (Feb. 9, 2015 Hearing, Tr. 40.) The Court expressed a fair measure of surprise that no documents had been produced that reflect Chipotle's decision—whether the initial classification or reevaluations—to classify all non-California Apprentices as exempt employees.[1]

The Court has reviewed the documents presented by the plaintiffs in camera. They reflect, generally, that Mr. Moran is an engaged executive and has a role in, and deep understanding of, staffing structures, the duties and responsibilities of an Apprentice, and ways to maximize shareholder profits through labor management. Given his involvement in restaurant-level management, the Court assumes that Mr. Moran does possess information relevant to the issues in this case. Moreover, despite his mere nine

---

1. The Court understands that Chipotle is still searching for documents that reflect the California reclassification decision.

year tenure with Chipotle (first as its President and Chief Operating Officer, and then as co-CEO), he served as its General Counsel from 1998–2005 while still an attorney with Messner & Reeves, LLC (now Messner Reeves LLP, and counsel for Chipotle in this matter). Moran Decl. at. ¶ 1. The Court assumes that given his significant role with Chipotle for nearly two decades, he may well have unique information to offer plaintiffs. Moreover, given the dearth of "classification documents" produced by Chipotle in this case, it is unreasonable to also limit the plaintiffs' opportunity to depose executives who plainly have relevant information, even if some of it may be cumulative.

The Court is mindful of Mr. Moran's schedule, and accepts that he may, indeed, have very little to testify about on the relevant topics. But the plaintiffs should be given a limited opportunity to probe his institutional memory. Accordingly, the Court grants the plaintiffs a four-hour deposition of Mr. Moran at a time and location of his convenience.

**SO ORDERED.**

### ORDER ON RECONSIDERATION

On March 6, 2015, the defendants filed a motion for reconsideration under Local Civil Rule 6.3, seeking reconsideration of the Court's February 27, 2015 Order authorizing a four-hour deposition of defendant's Co–CEO Montgomery F. Moran. On March 17, 2015, the plaintiffs filed a letter in opposition to the motion, and the defendant filed a reply on March 19, 2015.

 "The standards governing a motion for reconsideration under Local Rule 6.3 are the same as those under Federal Rule of Civil Procedure 59(e)." *Abrahamson v. Bd. of Educ.*, 237 F.Supp.2d 507, 510 (S.D.N.Y. 2002). Thus, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995). Rather, to prevail on a motion for reconsideration, the movant must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* Motions for reconsideration cannot be based on arguments not previously raised. *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998) ("Rule 59 is not a vehicle for . . . presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'. . . ."). Faithful to these standards, the Court construes Local Rule 6.3 narrowly to avoid repetitive arguments on issues that have been considered fully by the Court.

Here, the defendant argues that the Court's decision was in error because it was premised on "assumptions," acknowledged the possibility that Mr. Moran's deposition could be cumulative and not unique, and that the deposition was granted "to effectively penalize" the defendant. Defendant's arguments are incorrect and unavailing. Although "it *may* be appropriate to preclude a redundant deposition," preclusion is not required but turns on the Court's analysis of the likelihood that the individual sought to be deposed possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential for disruption of business. *Consolidated Rail Corp. v. Primary Indus. Corp.*, 92 Civ. 4927(PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (emphasis supplied). *See also Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y.1997). These factors, moreover, are weighed against the principle that favors broad discovery in civil actions and the recognition that executives are not, *per se*, exempt from deposition.

In seeking reconsideration, Chipotle focuses on the likelihood that Mr. Moran will provide new information to the plaintiffs. Specifically, Chipotle contends that Mr. Moran either will possess no information whatsoever, or that he will only repeat testimony that has already been provided by other executives. The Court is mindful of that inherent risk—as reflected in the deposition's limitation to four hours—but is not satisfied that nothing relevant and probative will come from Mr. Moran's deposition, as Chipotle suggests. Having reviewed the documents submitted *in camera* by the plaintiffs, and

based on the breadth of knowledge and experience that Mr. Moran has had with Chipotle over the last 16 years, the Court concluded that Mr. Moran's *experience* is unique, and he likely has relevant personal knowledge of the overtime classification decisions for Apprentices. "[T]his is far from a trivial case. Enough is at stake to justify the deposition of an apex witness" like Mr. Moran. *Chevron Corp. v. Donziger*, 11 Civ. 0691(LAK), 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013).

Finally, the Court rejects Chipotle's characterization that requiring Mr. Moran to be deposed is "to effectively penalize Chipotle" for discovery failings. The Court's decision merely reflects a balancing of factors, including whether the deposition of a high-level executive will advance the search for truth. The Court has not suggested that any party has improperly withheld documents or abused the discovery process. To the contrary, the Court views both sides as working in good faith to produce relevant non-privileged information. Requiring that Chipotle produce its co-CEO is simply part of that process.

The Court has also considered the defendant's request that the deposition instead be taken by Rule 31 written questions. "Written questions are rarely an adequate substitute for oral depositions both because it is difficult to pose follow-up questions and because the involvement of counsel in the drafting process prevents the spontaneity of direct interrogation. Accordingly, depositions upon written questions are disfavored." *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 397 (S.D.N.Y.2006). Charles Alan Wright has explained, "[t]he advantage of a deposition on written interrogatories is that counsel for the parties need not go to some distant place to be present at the taking of the deposition.... Though Rule 31 appears to offer a saving in expense where the deposition is to be taken at some faroff place, its advantages are largely illusory. The procedure is more cumbersome than an oral examination, and is less suitable for a complicated inquiry, or for a searching interrogation of a hostile or reluctant witness." Wright, *Discovery*, 35 F.R.D. 39, 59 (1963); 8A Charles Alan

Wright & Arthur R. Miller, Federal Practice & Procedure § 2132 (3d ed. 2014) ("One of the obvious difficulties with Rule 31 is that it is hard to formulate cross, redirect, or re-cross questions before the answers to earlier questions are known. This lack of flexibility, which afflicted the old Chancery procedure, undoubtedly is one of the reasons for the infrequent use of the procedure."). Moreover, although Rule 31 may save plaintiffs' counsel an expense of travel, it does not save Mr. Moran himself any time; he must still sit for his deposition with a court reporter, and he may be exposed to the possibility that if his answers are fruitful, the plaintiffs could thereafter request that he spend additional hours being deposed orally. The Court has considered the possibility for harassment and the potential disruption of business and finds that Chipotle has "proffered no persuasive reason why the presumption of oral depositions should be disregarded." *Zito*, 233 F.R.D. at 397. The plaintiffs have the right to develop the record by seeking Mr. Moran's knowledge through oral deposition.

The Court has not overlooked any issues or binding case law, and the issue has already been decided. The defendant's motion for reconsideration is denied.

**SO ORDERED.**