Bradshaw v. Maiden, 2017 NCBC 29.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

JAMES W. BRADSHAW; CARLA O. BRADSHAW; RESORT RETAIL ASSOCIATES, INC.; E.C. BROADFOOT; CHRISTINA DUNN CHANDRA; JAMES DOYLE; THOMAS F. EGAN; CHARLES EGGERT; MARK P. GARSIDE; DR. JAMES J. GREEN, JR.; ROBERT K. GRUNEWALD; RONALD HOLMES; DAVID LAUCK; CURT W. LEMKAU, JR.; EVAN MIDDLETON; JOSHUA M. NELSON; CHRISTIAN C. NUGENT; PETER B. PAKRADOONI; FORD PERRY; MARCELLO G. PORCELLI; ADAN RENDON; RICHARD H. STEVENSON; PAUL STOKES; LAWRENCE J. THEIL; R. MITCHELL WICKHAM; WILLIAM H. WILLIAMSON, III; WILLIAM K. WRIGHT, JR.; ALEX M. WOLF; CHAFFIN FAMILY LIMITED PARTNERSHIP; and SOLARIS CAPITAL LLC,

Plaintiffs,

v.

STEPHEN E. MAIDEN; MAIDEN CAPITAL, LLC; and SS&C TECHNOLOGIES, INC., successor by merger to SS&C FUND ADMINISTRATION SERVICES, LLC (a/k/a SS&C FUND SERVICES),

Defendants.

SS&C TECHNOLOGIES, INC., successor by merger to SS&C FUND ADMINISTRATION SERVICES, LLC,

Third-Party Plaintiff,

v.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 14445

ORDER AND OPINION ON
BCR 10.9 DISCOVERY DISPUTE

MAIDEN CAPITAL OPPORTUNITY
FUND, LP,

Third-Party Defendant.

1.   **THIS MATTER** is before the Court pursuant to North Carolina Business

Court Rule ("BCR") 10.9 in the above-captioned case.

> *Lewis & Roberts, PLLC, by Gary V. Mauney and James A. Roberts, III, for Plaintiffs James W. Bradshaw, Carla O. Bradshaw, Resort Retail Associates, Inc., E.C. Broadfoot, Christina Dunn Chandra, James Doyle, Thomas F. Egan, Charles Eggert, Mark P. Garside, Dr. James J. Green, Jr., Robert K. Grunewald, Ronald Holmes, David Lauck, Curt W. Lemkau, Jr., Evan Middleton, Joshua M. Nelson, Christian C. Nugent, Peter B. Pakradooni, Ford Perry, Marcello G. Porcelli, Adan Rendon, Richard H. Stevenson, Paul Stokes, Lawrence J. Theil, R. Mitchell Wickham, William H. Williamson, III, William K. Wright, Jr., Alex M. Wolf, Chaffin Family Limited Partnership, and Solaris Capital LLC.*

> *Alston & Bird, LLP, by Michael A. Kaeding, Ryan P. Ethridge, and Jessica P. Corley (pro hac vice), for Defendant SS&C Technologies, Inc.*

Bledsoe, Judge.

I.

PROCEDURAL AND FACTUAL BACKGROUND

2.   Plaintiffs initiated this litigation on August 7, 2014 and filed an Amended

Complaint on November 25, 2014.  The parties are currently engaged in discovery,

and the fact discovery deadline is April 28, 2017.

3.   SS&C Technologies, Inc. ("SS&C") initiated this matter on March 9, 2017 by

e-mailing the Court a request for a telephone conference pursuant to BCR 10.9(b)(1)

so that the Court could address a discovery dispute between the parties.

4.   As stated in its email request, SS&C seeks an order from the Court

prohibiting Plaintiffs' counsel from deposing SS&C's President and Chief Operating

Officer ("COO"), Normand A. Boulanger ("Boulanger").  Plaintiffs timely e-mailed the

Court their response opposing SS&C's request in accordance with BCR 10.9(b)(1), and the Court held a telephone conference to discuss the dispute on March 27, 2017.

5.     Plaintiffs' claims in this action arise out of an alleged multi-million dollar fraudulent "Ponzi scheme" that Defendant Stephen A. Maiden ("Maiden") purportedly operated through a hedge fund managed by Defendant Maiden Capital, LLC.    Maiden's fund was a limited partnership named the Maiden Capital Opportunity Fund, LP ("Fund").    SS&C served as the Fund's administrator from approximately 2007 until the Fund's collapse in 2013.    Plaintiffs were limited partners and investors in the Fund.    The Court has more fully discussed Plaintiffs' allegations and claims in its earlier opinion, *Bradshaw v. Maiden*, 2015 NCBC LEXIS 80 (N.C. Super. Ct. Aug. 10, 2015).

6.     SS&C's duties as the Fund's administrator arose from an Administrative Services Agreement (the "ASA" or "Agreement") entered into by SS&C and the Fund on September 1, 2006.    Boulanger signed the ASA on behalf of SS&C.

7.     Among the obligations imposed by the ASA, SS&C agreed that it would "keep at its premises books, records and statements as may be reasonably necessary to document the transactions recorded by us on behalf of the Fund."    Nevertheless, Plaintiffs have elicited testimony suggesting that SS&C's accountants did not independently document the existence of "restricted investments" in the Fund, instead relying on e-mails from Maiden stating that the Fund owned these investments, which ultimately proved to be fraudulent or nonexistent.    SS&C's

accountant stated that merely relying on Maiden's e-mail satisfied SS&C's duties of sufficient documentation.

8. Based on this evidence, Plaintiffs contend that they must be able to depose Boulanger, who signed the ASA, to determine: (i) what "instructions, policies, or training" were provided to the SS&C employees charged with carrying out SS&C's duties under the contract; (ii) what actions SS&C took to "make sure that SS&C's accountants complied with the 'reasonable documentation' duties imposed by the contract;" and (iii) what SS&C did to fulfill its "duties of care that sprang from the [ASA]." As a result, Plaintiffs contend that the Court should permit Plaintiffs to depose Boulanger in this action.

9. SS&C argues, on the other hand, that: (i) Boulanger has no unique or special knowledge of the facts at issue in this case; (ii) Boulanger had no involvement with the negotiation or implementation of the ASA; (iii) none of the "thousands of emails or other documents produced by the parties" reveal "any communication between [Boulanger] and [Maiden] regarding the negotiation or interpretation of the terms of the ASA, or any other facts in issue in this case;" (iv) none of the thousands of documents produced by the parties show any communications between Boulanger and any of the Plaintiffs; (v) Boulanger's only involvement with the matters in dispute was to sign the ASA on behalf of SS&C, which SS&C asserts Boulanger did as a routine matter "in accordance with SS&C's standing signature policy and practice;" (vi) scheduling and preparing for Boulanger's deposition would be particularly burdensome for SS&C and Boulanger, especially in light of Boulanger's many

extensive responsibilities and obligations as SS&C's President and COO and the heavy deposition schedule in this case over the next 30 days; and (vii) Plaintiffs have not attempted or found inadequate less burdensome means to secure the information sought from Boulanger.

10. As a result, SS&C argues that the burden of deposing Boulanger substantially outweighs any marginal relevance Boulanger's potential testimony may have, and thus SS&C seeks an order prohibiting Boulanger's deposition under Rule 26 of the North Carolina Rules of Civil Procedure.

11. Having considered the parties' written summaries of the dispute, the evidence of record, and the arguments of counsel at the telephone conference, the Court, for the reasons set forth below, and in the exercise of its discretion, concludes and orders that Plaintiffs shall not be permitted to depose Boulanger at this time, without prejudice to Plaintiffs' right to renew their request for good cause shown upon the completion of further discovery or in the event of other changed circumstances.

## II.

## LEGAL ANALYSIS

12. Rule 26 establishes a liberal scope of discovery; parties can seek discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action," even if the information sought will be inadmissible at trial or the examining party already has knowledge of the information sought. N.C. R. Civ. P. 26(b)(1). The Court may, however, on its own initiative or upon request of a party, limit discovery if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

N.C. R. Civ. P. 26(b)(1a). The Court may also limit discovery upon a party's motion "to protect a party or person from unreasonable annoyance, embarrassment, oppression, or undue burden or expense." N.C. R. Civ. P. 26(c).

13. Under Federal Rule of Civil Procedure 26, federal courts have developed the "apex doctrine" to address the precise fact scenario presented in this discovery dispute. "In its stronger form, the doctrine holds that, before a plaintiff may depose a defendant corporation's high-ranking ("apex") officer, that plaintiff must show that '(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted.'" *Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, No. 5:07-CV-00140-RLV-DLH, 2012 U.S. Dist. LEXIS 131394, at *16–17 (W.D.N.C. Sept. 14, 2012) (citation omitted). "Simply stated, the apex doctrine applies when those at the top of the company, i.e. men and women at the 'apex,' really don't have personal knowledge about what is going on with the product, or its marketing, or its financing or really anything else that might be of interest to the plaintiffs, or the attorneys, or the jury, or the court." *In Re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 14-mc-00072, 2014 U.S. Dist. LEXIS 89981, at *8 (E.D. Pa. July 1, 2014).

14. The federal courts applying the apex doctrine have recognized the "tremendous potential for abuse or harassment" presented by depositions of an official at the "highest level or 'apex' of corporate management," *In re Lipitor Atorvastatin Calcium Mktg.*, No. 2:14-mn-02502-RMG, 2014 U.S. Dist. LEXIS 194852, at *5 (D.S.C. Nov. 13, 2014), and have embraced the doctrine to "ensur[e] that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs," *Performance Sales & Mktg.*, 2012 U.S. Dist. LEXIS 131394, at *16. Nevertheless, federal courts have consistently recognized that "[t]he 'apex' doctrine exists in tension with the otherwise broad allowance for discovery of party witnesses under the federal rules." *Apple Inc. v. Samsung Electronics Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012).

15. The apex doctrine stands out in many federal jurisdictions because the doctrine shifts the burden of proof to the proponent of the deposition. *See, e.g., Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015) ("The party seeking the deposition of the high-ranking official has the burden to show that the deposition is necessary."); *Performance Sales & Mktg.*, 2012 U.S. Dist. LEXIS 131394, at *19–20 ("Put simply, the apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive [is inappropriate under Rule 26]."). Nevertheless, some jurisdictions reject the apex doctrine altogether on this ground, while others follow a version of the apex doctrine that maintains the traditional burden of proof under Rule 26. *See, e.g., Crest Infiniti*

*II, LP v. Swinton*, 174 P.3d 996, 1004 (Okla. 2007) ("We decline to adopt a form of the apex doctrine that shifts a burden to the party seeking discovery."); *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015) (stating that even in apex doctrine scenarios the plaintiff bears no burden to show that the deponent has special knowledge).

16. North Carolina state courts have not explicitly adopted the apex doctrine, but this Court has found federal decisions interpreting the apex doctrine to be useful in applying the balancing factors set forth in our state's Rule 26. *See Next Advisor Continued, Inc. v. LendingTree, Inc.*, 2016 NCBC LEXIS 72, at *6–10 (N.C. Super. Ct. Sept. 16, 2016) (discussing the apex doctrine and concluding that "an assessment and balancing of the factors contained in Rules 26(b) and 26(c)" controlled the court's decision); *see also, e.g.*, *Willis v. Duke Power Co.*, 291 N.C. 19, 34, 229 S.E.2d 191, 200 (1976) ("One party's need for information must be balanced against the likelihood of an undue burden imposed upon the other.").

17. This Court did not adopt the apex doctrine in *Next Advisor* and does not do so in this Order and Opinion. Because Rules 26(b) and (c) clearly set forth the grounds on which discovery may appropriately be limited, and our rules make clear that the party opposing discovery bears the burden of proof, the Court concludes, as it did in *Next Advisor*, that adoption of the apex doctrine is not necessary and that Rule 26 is entirely adequate to resolve disputes of this nature. *See Next Advisor*, 2016 NCBC LEXIS 72, at *9. Nonetheless, the Court finds federal and state court decisions applying the apex doctrine useful in discerning the unique factual

considerations that arise when a party seeks to depose a high-ranking corporate executive.

18. Plaintiffs admit that they seek to depose SS&C's President and COO primarily, if not solely, because he signed the ASA on behalf of SS&C. A federal district court in the Northern District of California faced a nearly identical set of facts in *M.H. v. Cnty. of Alameda*, No. 11-cv-02868-JST, 2013 U.S. Dist. LEXIS 146166, at *7 (N.D. Cal. Oct. 3, 2013). In that case, the plaintiffs argued that because a CEO signed a contract on behalf of the corporate defendant, the CEO was "the best person to testify about the obligations [the corporate defendant] undertook under that contract." *Id.* In applying the apex doctrine to bar the deposition, the court held that "[t]he mere fact of [the CEO's] signature on a contract to which [the corporate defendant] is a party does not establish that [the CEO] 'has unique first-hand, non-repetitive knowledge of the facts at issue' regarding the obligations under that contract, or how they were performed." *Id.* Based on this conclusion, and the court's finding that the plaintiffs "have [not] exhausted their alternatives for obtaining the information using 'less intrusive discovery methods,'" including by a Rule 30(b)(6) deposition, the court denied the motion to take the CEO's deposition.

19. Similar considerations are present here. Plaintiffs contend that Boulanger must be deposed because he, and he alone, can testify to any "instructions, policies, or training" SS&C issued to its employees and accountants concerning the meaning and interpretation of the ASA and SS&C's obligations under the contract. However, despite engaging in rigorous discovery for over eighteen months, Plaintiffs have not

shown that Boulanger had any involvement in this dispute other than as the corporate officer who executed the ASA on behalf of SS&C. Plaintiffs have not offered or forecasted evidence that Boulanger was involved in, or had personal responsibility for, the negotiation, implementation, or interpretation of the ASA at any level, or that Boulanger instructed or directed any SS&C employees, accountants, or agents in how to perform SS&C's duties under the ASA. Indeed, other than affixing his signature to the ASA, which SS&C contends was simply an exercise of SS&C's standard signature policy and practice, there is no evidence before the Court that Boulanger was a party to any communication with Maiden, a Plaintiff, or an SS&C employee or agent about any facts that are at issue in this litigation, including concerning SS&C's interpretation of, and duties and compliance efforts under, the ASA.

20. In addition, Plaintiffs have failed to show that the information Plaintiffs seek, even if known to Boulanger, is information that is unique and special to him or, given the paucity of evidence tying Boulanger to the ASA, that he is the best person within the company to testify about the Agreement. To the contrary, the information sought concerns SS&C's corporate policies, practices, and actions, which a corporate representative or others within the company with appropriate authority should be able to identify and explain, at least—based on this record—more fully than Boulanger.

21. Finally, Plaintiffs have also failed to show that the information sought cannot be obtained "from some other source that is more convenient, less burdensome, or less expensive." N. C. R. Civ. P. 26(b)(1a). As stated during the Rule 10.9 telephone

conference, Plaintiffs have deposed at least four SS&C witnesses with operational responsibility concerning the ASA, but Plaintiffs have not offered evidence from any of these witnesses or from other sources that these SS&C witnesses were unable to provide information concerning the meaning, interpretation, and implementation of the Agreement. Likewise, there is no evidence before the Court that Plaintiffs have attempted to obtain this information through a Rule 30(b)(6) deposition of SS&C or made any showing that Boulanger has particular knowledge of the information sought that could not be obtained through a 30(b)(6) deposition or other appropriate, less intrusive, discovery methods.

22. At the same time, SS&C has persuasively argued that Boulanger has substantial, extensive, and time-sensitive duties and obligations in his role of President and COO of SS&C that weigh in favor of prohibiting his deposition in light of Plaintiffs' failure to show that he possesses any unique or special knowledge that is relevant to this case. This is particularly true considering the time and expense involved in scheduling and preparing Boulanger for deposition before the April 28 discovery deadline and the twenty-plus fact depositions the parties have noticed to occur by that same date.

23. Plaintiffs rely upon this Court's *Next Advisor* decision, but that case is readily distinguishable. In that case, the dispute arose out of a failed corporate acquisition, and the evidence of record suggested that the CEO had an active role in the negotiations, the failure of the negotiations, and the resulting conduct that prompted the plaintiff corporation to bring suit. *Next Advisor*, 2016 NCBC LEXIS

72, at *11–12. Based on these facts, this court concluded that the CEO had "unique, personal knowledge relevant to the issues in dispute in this litigation," and, in particular, "unique, personal knowledge" concerning "his role and participation in the origins of the current dispute between [the plaintiff] and [the defendant]." Recognizing the frequently applied principle that "if a prospective deponent has relevant knowledge, the mere fact that the prospective deponent is a CEO or is busy does not constitute a showing of good cause for a protective order," the court allowed the plaintiffs to depose the defendant's CEO. *Id.* The contrast between the defendant CEO's active participation in the facts at issue in *Next Advisor* and the lack of any comparable evidence of Boulanger's active participation in the facts underlying this case, apart from signing the ASA on behalf of SS&C, is stark.

24. Accordingly, for the reasons set forth above, the Court concludes, in the exercise of its discretion, that the deposition of Boulanger should not be permitted at this time under the balancing test set forth in North Carolina Rules of Civil Procedure 26(b)(1a) and (c). *See, e.g.*, *Analog Devices, Inc. v. Michalski*, 2006 NCBC LEXIS 16, at *32–38 (N.C. Super. Ct. Nov. 1, 2006) (discussing discovery standards, including the "relative burdens and benefits of [discovery] as contemplated by the balancing test of [Rule 26]"). *See also, e.g.*, *Blue Cross Blue Shield v. Wells Fargo Bank, N.A.*, No. 11-2529, 2012 U.S. Dist. LEXIS 161041, at *7 (D. Minn. Nov. 9, 2012) (disallowing executive's deposition because he "did not have relevant knowledge"); *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991) (disallowing vice-president's deposition because "it ha[d] not been established that the information necessary

[could not] be had from [other witnesses]," including via Rule 30(b)(6), "which could satisfy some of plaintiffs' needs").

25. The Court's ruling, however, is without prejudice to Plaintiffs' right to renew their request to depose Boulanger should further discovery or other circumstances establish good cause for Boulanger's deposition to proceed. *See, e.g.*, *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (affirming disallowance of president's deposition until plaintiff first deposed, and established the inadequacy of depositions of, defendant's 30(b)(6) corporate representative and lower-ranking company officials); *Bank of the Ozarks v. Capital Mortg. Corp.*, No. 4:12-mc-00021, 2012 U.S. Dist. LEXIS 99506, at *6–8 (E.D. Ark. July 18, 2012) (disallowing CEO's deposition until defendants pursued and demonstrated as inadequate "less burdensome avenues for obtaining the information sought," including through Rule 30(b)(6) and corporate employee depositions).

## III.

## CONCLUSION

26. **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** that Plaintiffs shall not be permitted to depose SS&C's President and COO, Normand A. Boulanger, in this action, without prejudice to Plaintiffs' right to renew their request for good cause shown upon the completion of further discovery or in the event of other changed circumstances.

**SO ORDERED**, this the 31st day of March, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases